UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

LUCIANO A. PICARELLA,

                 *Plaintiff,*

     -against-

UNITED STATES OF AMERICA,

                 *Defendant.*

---------------------------------------X

**MEMORANDUM AND ORDER**

22-CV-4983(KAM)(ARL)

**KIYO A. MATSUMOTO, United States District Judge:**

     Plaintiff Luciano A. Picarella (the "Plaintiff") commenced the instant action against the United States of America (the "Defendant"), seeking money damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. (the "FTCA"). (ECF No. 1). Plaintiff alleges that he sustained injuries as a result of negligent medical care rendered to him by Defendant at the Northport VA Medical Center between June 19, 2017, and November 30, 2020.

     Presently before the Court is Defendant's motion to dismiss the First Amended Complaint ("FAC"), pursuant to Fed. R. Civ. P. 12(b)(6).  (*See* ECF No. 20, Defendant's Notice of Motion to Dismiss.)  For the reasons set forth below, Defendant's motion is **DENIED.**

## BACKGROUND

The Court accepts the allegations in the Plaintiffs' First Amended Complaint as true for purposes of deciding the Motion to Dismiss. *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). Plaintiff submitted as part of his opposition to the pending motion to dismiss two affirmations – one from his attorney, Cary Greenberg, Esq., and another from Joph Steckel, M.D., a physician. The Court cannot consider these materials on a motion to dismiss because they are not "(1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint."[1] *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010); *see also United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) ("[i]n considering a motion to dismiss for failure to state a claim . . . the court may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice") (internal quotation marks and citation omitted). Plaintiff also submitted medical records underlying the claims made in the complaint, which the Court considers to be incorporated into the complaint by reference. *See Xiao Qing Liu v. New York State Dep't of Health*, No. 16-CV-4046 (ER), 2017 WL 3393944, at *4 (S.D.N.Y. Aug. 7, 2017) (finding medical records relied on in

[1] Both of the affidavits submitted post-date the FAC and necessarily could not have been "integral" to it or incorporated into it by reference.

2

drafting complaint may be considered in assessing motion to dismiss).

### I.  Factual Background

Plaintiff is a citizen and resident of Suffolk County, New York, who is a veteran of the United States military and is entitled to health care through the Veterans Administration ("VA"). (ECF No. 14, First Amended Complaint ("FAC"), at ¶2.) Plaintiff alleges that he was diagnosed with benign prostatic hyperplasia (referred to as "BPH") by his primary care physician, Dr. Richard M. Castagnino, at the Northport VA Medical Center ("VAMC Northport") in Northport, NY, on or about June 18, 2013. (*Id.* at ¶¶11, 14-15, 19.) Plaintiff subsequently began treatment for BPH at VAMC Northport from June 18, 2013, forward. (*Id.* at ¶14.) Plaintiff was referred to a urologist by Dr. Castagnino on November 3, 2020, and a subsequent urology consult on December 7, 2020, revealed an abnormal prostate. (*Id.* at ¶¶28-29.) Plaintiff underwent a prostate biopsy on December 18, 2020[2], which revealed prostate cancer, and Plaintiff underwent a radical prostatectomy at Stony Brook University Medical Center on April 30, 2021. (*Id.* at ¶¶30-32.) Plaintiff was further treated via x-ray radiation therapy and Eligard treatments after the prostatectomy. (*Id.* at ¶32.)

---

[2] While Plaintiff does not specify where the biopsy occurred in his complaint, his medical records indicate that it was conducted at the Northport VAMC. (*See* ECF No. 22 at 194.)

Plaintiff was seen by Dr. Castagnino or other physicians at VAMC Northport for treatment of his BPH several times between June 19, 2017, and November 3, 2020. (*Id.* at ¶¶14-27.)  On June 19, 2017, Plaintiff was seen by Dr. Castagnino with complaints of nocturia every 2 and a half hours. (*Id.* at ¶15.)  Dr. Castagnino's notes indicate that Plaintiff had a past medical history of BPH and that Flomax could be used to address the nocturia[3]. (ECF No. 22, Exhibit 2 to Plaintiff's Affirmation ("Med. Rec."), at 184[4].) On December 4, 2017, Plaintiff was again seen by Dr. Castagnino, prescribed Tamsulosin[5] for his prostate, and was advised again to "try Flomax" for his BPH. (FAC at ¶16, Med. Rec. at 179-80.)  On March 5, 2018, Plaintiff was seen by Dr. Castagnino and was given a "continued prescription for "Tamsulosin" for BPH. (FAC at ¶17, Med. Rec. at 170.)  On March 14, 2018, Plaintiff was seen by Marina Pilic, a Nurse Practitioner, for a gastroenterology outpatient consult ahead of a scheduled colonoscopy. (FAC at ¶18, Med. Rec. at 166-168.)  Ms. Pilic noted Plaintiff's current medications and past medical history, including his diagnosis of BPH by Dr.

---

[3] Nocturia is a medical term that means "[w]aking up more than once each night to pass urine." Mayo Clinic, Frequent Urination Definition, https://www.mayoclinic.org/symptoms/frequent-urination/basics/definition/sym-20050712 (last visited March 20, 2024).

[4] The Court utilizes the page number assigned by ECF in referencing Plaintiff's medical records.

[5] According to the Mayo Clinic, "Tamsulosin is used to treat men who have symptoms of an enlarged prostate gland, which is also known as benign enlargement of the prostate (benign prostatic hyperplasia or BPH)." Tamsulosin is also sold under the brand name "Flomax." *See* Mayo Clinic, Tamsulosin (Oral Route), https://www.mayoclinic.org/drugs-supplements/tamsulosin-oral-route/description/drg-20068275 (last visited March 20, 2024).

Castagnino in 2013.   (Med. Rec. at 166-67.)   On June 4, 2018, Plaintiff underwent a colonoscopy, and as part of the pre-procedure process, Dr. Deepak Desai reviewed Plaintiff's medications, including Tamsulosin, and past medical history, including his diagnosis of BPH.  (FAC at ¶19, Med. Rec. at 160-61.)

In addition to his treatment at the VA, Plaintiff also underwent "yearly physical examinations" with the Setauket Volunteer Fire Department, which included blood and laboratory work performed by Northwell Health Laboratories.  (FAC at ¶20.) Northwell Health Laboratories performed blood work for Plaintiff on June 9, 2018, which revealed a PSA[6] level of 7.99 ng/ml.  (FAC at ¶21.)  Plaintiff was subsequently seen by Dr. Castagnino on October 12, 2018, who noted Plaintiff had "mild symptoms" for his BPH.  (FAC at ¶22, Med. Rec. at 147-48.)  Plaintiff alleges that he provided Dr. Castagnino "with the PSA report by Northwell Health Laboratories dated June 9, 2018, indicating an elevated PSA level of 7.99" but the medical records do not reflect any discussion of Plaintiff's June 9, 2018, PSA level during the October 12, 2018, visit.[7]  (FAC at ¶23, Med. Rec. at 147-48.)

---

[6] According to the Mayo Clinic, "[t]he PSA test is a blood test used primarily to screen for prostate cancer.  The test measures the amount of prostate-specific antigen (PSA) in your blood."  Mayo Clinic, PSA Test, https://www.mayoclinic.org/tests-procedures/psa-test/about/pac-20384731 (last visited March 20, 2024).

[7] In contrast, Dr. Castagnino's notes for the November 3, 2020, visit, where Plaintiff also alleges he provided PSA level results, include a reference to "[e]levated Psa Urology consult."  (Med. Rec. at 139.)  Plaintiff's medical records include a scanned copy of the 2020 lab reports.  (Med. Rec. at 138.)

On March 29, 2019, VAMC Northport attempted to call Plaintiff to schedule a primary care appointment with Dr. Castagnino, but was unable to reach Plaintiff and left a voicemail. (Med. Rec. at 145-46.)  VAMC Northport again called Plaintiff on December 21, 2019, to attempt to schedule a primary care appointment with Dr. Castagnino, but was unable to reach Plaintiff and left a voicemail. (Med. Rec. at 145.)  VAMC Northport called again on December 23, 2019, reached Plaintiff's wife, and asked her to have Plaintiff call back to schedule an appointment with Dr. Castagnino, his primary care provider.  (Med. Rec. at 145.)  Plaintiff was next seen by Dr. Castagnino on April 28, 2020, via a video appointment. (FAC at ¶24, Med. Rec. at 144.)  Dr. Castagnino noted reports of nocturia every 2-3 hours and opined that Plaintiff could "try increase[d] dose of Tamsulosin" to manage his BPH.  (Med. Rec. at 144.)  Plaintiff was seen again by Dr. Castagnino on September 3, 2020, who noted continued complaints of nocturia, and recommended an increase in the dose of Tamsulosin.  (FAC at ¶25, Med. Rec. at 142-43.)

On October 4, 2020, Plaintiff again underwent blood work performed by Northwell Health Laboratories.  (FAC at ¶26.) Northwell Health Laboratories' report showed a PSA level of 16.30 ng/ml, and Plaintiff was "advised to follow up with his doctor."[8]

---

[8] Plaintiff does not specify who advised him to follow up with his doctor.

(*Id.*)   Plaintiff called VAMC Northport on October 29, 2020, and requested a call back "in regards to his medical concerns." (Med. Rec. at 142.)   VAMC Northport called back on October 30, 2020 for "PSA clarification" and left a voicemail for Plaintiff.   (*Id.*)   Plaintiff was seen by Dr. Castagnino on November 3, 2020, during which visit Plaintiff complained of "some redness in urine 2 months ago" as well as his elevated PSA levels.   (FAC at ¶¶27-28, Med. Rec. at 138-39.)   Dr. Castagnino referred Plaintiff to a urologist for a consultation.   (Med. Rec. at 139.)   Plaintiff's October 4, 2020 lab reports from Northwell Health Laboratories were also scanned and added to Plaintiff's VA medical records as an outside medical record on November 10, 2020.   (Med. Rec. at 138.)

Plaintiff was seen by Dr. John Fitzgerald for a urology consult on December 7, 2020.   (FAC at ¶29, Med. Rec. at 137.)   Plaintiff noted that his current PSA was "16" and that it was "8" one year prior, and Dr. Fitzgerald's examination of the prostate found "abnormal" results.   (Med. Rec. at 137.)   Dr. Fitzgerald recommended a prostate biopsy, which was conducted on December 18, 2020.   (FAC at ¶30, Med. Rec. at 137.)   The biopsy examination, conducted on December 28, 2020, revealed a Gleason Score[9] of "7"

---

[9] According to the Mayo Clinic, a Gleason score is "[t]he most common scale used to evaluate the grade of prostate cancer cells."   "Most Gleason scores used to assess prostate biopsy samples range from 6 to 10. A score of 6 indicates a low-grade prostate cancer. A score of 7 indicates a medium-grade prostate cancer. Scores from 8 to 10 indicate high-grade cancers." Mayo Clinic, Diagnosis of Prostate Cancer, https://www.mayoclinic.org/diseases-

in four of twelve cores examined. (FAC at ¶31, Med. Rec. at 42-43.) Plaintiff subsequently underwent a radical prostatectomy[10] at Stony Brook University Medical Center on April 30, 2021, along with x-ray radiation therapy and Eligard[11] treatments. (FAC at ¶32, Med. Rec. at 93.)

## II. Procedural History

Plaintiff presented his Standard Form 95, asserting a claim against the VA for a failure to diagnose his prostate cancer, to the VA Office of the Inspector General on October 26, 2021. (*See* ECF No. 26, Greenberg Affirmation, at 1.) After receiving no decision on his claim, Plaintiff subsequently commenced the instant case on August 23, 2022, initially asserting against Defendant claims of both medical malpractice and ordinary negligence. (*See* ECF No. 1, Complaint, at ¶¶11-34.) Plaintiff subsequently filed a stipulation voluntarily dismissing the second cause of action – ordinary negligence – with prejudice. (*See generally* ECF No. 11.) Following a pre-motion conference to discuss Defendant's anticipated motion to dismiss, Plaintiff filed

---

conditions/prostate-cancer/diagnosis-treatment/drc-20353093 (last visited March 20, 2024).

[10] According to the Mayo Clinic, a "[r]adical prostatectomy is surgery to remove the entire prostate gland and surrounding lymph nodes to treat men with localized prostate cancer." Mayo Clinic, Prostatectomy, https://www.mayoclinic.org/tests-procedures/prostatectomy/about/pac-20385198 (last visited March 20, 2024).

[11] According to the Mayo Clinic, Eligard is a brand name for Leuprolide, a type of luteinizing hormone-releasing hormone (LHRH) agonists used to treat prostate cancer by blocking testosterone in the body. Mayo Clinic, Hormone therapy for prostate cancer, https://www.mayoclinic.org/tests-procedures/hormone-therapy-for-prostate-cancer/about/pac-20384737 (last visited March 20, 2024).

a First Amended Complaint on February 10, 2023, adding additional details about his medical treatment at the VA, among other things. (*See generally* FAC.)

Following the filing of Plaintiff's FAC, Defendant informed the court that it planned to proceed with an anticipated motion to dismiss for failure to state a claim.  The Court subsequently set a briefing schedule, and the motion to dismiss was fully briefed on September 8, 2023.  (*See* ECF No. 20, Defendant's Notice of Motion; ECF No. 21, Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def't Mem."); ECF No. 22, Plaintiff's Affidavit in Opposition; ECF No. 23, Plaintiffs' Memorandum of Law in Opposition ("Pl. Opp."); ECF No. 24, Defendant's Reply Memorandum of Law in Further Support of its Motion to Dismiss ("Def't Reply").)

On March 20, 2024, this Court issued an Order to Show Cause why the complaint should not be dismissed for lack of subject matter jurisdiction for failing to properly plead facts showing that a claim had been presented to the proper federal agency prior to commencing the instant action, as required by 28 U.S.C. § 2401(b).  (*See* Docket Order dated March 20, 2024.)  The Plaintiff responded to the order on March 22, 2024, with an affirmation enclosing the Standard Form 95 ("SF-95"), dated October 25, 2021, served upon the VA and providing proof of presentment.  (*See generally* ECF No. 26, Greenberg Affirmation.)   Plaintiff's

response shows that the VA received the SF-95 on October 26, 2021, which Defendant does not contest. (*Id.*)  Although it appears that Plaintiff may have served the SF-95 upon the incorrect office within the VA, "[d]elivery to the wrong officer within the relevant agency can [] satisfy the presentment requirement." *Schulte v. United States*, No. 21-CV-4042 (JMF), 2024 WL 708196, at *2 (S.D.N.Y. Feb. 21, 2024).

### LEGAL STANDARD

### I.   Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Glob. Hub Ltd.*

*v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014) (per curiam) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

## DISCUSSION

The Defendant's Motion to Dismiss urges that Plaintiff's claims are time-barred by the two-year statute of limitations that applies to claims brought under the FTCA.  (Def't Mem. at 7.) Specifically, Defendant argues that "claim for damages that resulted from allegedly negligent actions that occurred in 2017 and 2018, for which no prior SF-95 was submitted, are time-barred unless they did not accrue until on or after October 26, 2019." (*Id.*)  Plaintiff relies on New York's "continuous course of treatment doctrine" to "extend the Statute of Limitations" and prevent his claims from being time-barred.  (Pl. Mem. at 1.)

I.   **Timeliness of Claims under the FTCA**

   a. **Legal Standard**

"A cause of action under the FTCA must be brought within two years after the claim accrues." *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir. 1988); 28 U.S.C. § 2401(b).  "Federal law determines when the period of limitations in § 2401(b) begins to run." *Id.* (citation omitted).  Generally, an FTCA claim for medical malpractice accrues "at the time of injury." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).

There are two exceptions to the general rule regarding claim accrual that have been recognized by the Second Circuit.  The "diligence-discovery rule" postpones claim accrual "until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Id.* (quoting *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982)). Separately, the "continuous treatment doctrine" tolls the statute of limitations "where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the FTCA cause of action arose." *Ulrich*, 853 F.2d at 1080.

### b. Analysis

Inexplicably, neither party has mentioned the general availability of the diligence-discovery rule to postpone claim accrual and extend the statute of limitations under the FTCA.  Both parties cite extensively to New York state law regarding the continuous course of treatment doctrine, ignoring the clear guidance from the Second Circuit that "[f]ederal law determines the date that an FTCA claim accrues." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139 (2d Cir. 2011).  Defendant incorrectly references discussion of the New York statute of limitations for medical malpractice actions in a federal case that discusses *both* FTCA claims and claims brought under state law. (Def't Mem. at 9 (citing *Doane v. United States*, 369 F. Supp. 3d 422, 444 (N.D.N.Y. 2019)).  Plaintiff fails to cite a single

12

federal case in his opposition memorandum of law, citing only to New York state caselaw.[12] (Pl. Mem. at ii (Table of Authorities).)

Notwithstanding the failure of the parties to thoroughly research or brief the topic, the Court finds that the Plaintiff has pleaded sufficient facts to enable a factfinder to conclude that the diligence-discovery rule applies to Plaintiff's claims. As mentioned above, "[t]he diligence-discovery rule sets the accrual date at the time when, with reasonable diligence, the plaintiff has or should have discovered the critical facts of both his injury and its cause." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011) (internal quotation marks and citation omitted). "A claim will accrue when the plaintiff knows, or should know, enough 'to protect himself by seeking legal advice.'" *Id.* (quoting *Kronisch*, 150 F.3d at 121). "Once an injured party . . . knows enough to warrant consultation with counsel, and acts with diligence . . . to undertake such consultation, conscientious counsel will have ample time to protect the client's interest by investigating the case and determining whether, when, where, and against whom to bring suit." *Id.* "The diligent-discovery rule protects plaintiffs who are either experiencing the latent effects of a previously unknown

---

[12] The Court notes that the Second Circuit has examined caselaw both from other Circuits and New York state in examining the rationales supporting the continuous treatment doctrine. *See Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080-81 (2d Cir. 1988). This does not excuse the Plaintiff's failure to cite to any binding federal authority, however.

injury or struggling to uncover the underlying cause of their injuries from having their claims time-barred before they could reasonably be expected to bring suit; at the same time, the rule avoids unduly extending the limitations period for those who could have timely presented their claim to [the federal agency] had they acted diligently in protecting their interests." *Id.*

The injury central to the instant dispute arises from alleged medical malpractice by VAMC Northport. Specifically, Plaintiff alleges that VAMC Northport's failure to diagnose his prostate cancer between 2017 and 2020 foreclosed "the best options for treatment and a more favorable prognosis." (FAC at ¶36.) Because test and exams were not conducted by VAMC Northport physicians, his cancer was not diagnosed earlier, and consequently Plaintiff alleges that he was required to "undergo a radical prostatectomy and to undergo x-ray radiation therapy and hormonal therapy." (*Id.* at ¶37.) As a result, the alleged cause of the injury, for purposes of the diligence-discovery rule, is VAMC Northport's failure to diagnose and properly treat Plaintiff's cancer.

Under the Second Circuit standard, Plaintiff's claim accrued when he "ha[d] notice that the cause of his [worsened condition wa]s in the government's control" and did not arise from "a concurrent but independent cause that would not lead anybody to suspect that the government had been responsible for the injury." *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 178 (2d Cir.

2008).  Critically, claim accrual requires notice "not of harm but of iatrogenic [doctor-caused] harm." *Id.*  Thus, Plaintiff's claim accrued when he "was told of or had reason to suspect" both the existence of his worsened condition and its "relat[ion] in some way to the medical treatment []he received.'" *A.Q.C. ex rel Castillo*, 656 F.3d at 142 (quoting *Valdez ex rel. Donely*, 518 F.3d at 180).

The Court finds that, at the earliest, Plaintiff's claims accrued when he learned the results of his biopsy, indicating that he had prostate cancer, in December 2020.  (FAC at ¶31, Med. Rec. at 42-43); *see also Carroll v. United States,* No. 21-CV-1197, 2023 WL 5380433, at *3 (N.D.N.Y. Aug. 21, 2023) (finding under the discovery rule, plaintiff's claim accrued "when he learned of his [deep vein thrombosis] diagnosis").  Plaintiff filed his administrative claim with the VA on October 26, 2021. (*See* ECF No. 26.)  Thus, even if Plaintiff's claims were to accrue on the day that he learned of his cancer diagnosis, his submission to the VA would have been within two years, and therefore timely.  *See* 28 U.S.C. 2401(b).

As previously noted, a claim accrues under the diligence-discovery standard only when a plaintiff "had, or when with reasonable diligence should have discovered, the critical facts of both [his] injury and its cause." *Valdez ex rel. Donely*, 518 F.3d at 179.  It is not entirely clear that Plaintiff would have been

15

sufficiently aware in December 2020 that his prostate cancer could have been diagnosed earlier, or that alleged malpractice by VA doctors caused the misdiagnosis.  However, there is no need for the Court to further examine the specific date of accrual, given its finding that the claims accrued no earlier than the date of diagnosis.  Even under this early date of claim accrual, Plaintiff's presentment of his claim to the VA was within the two year time limit.

Because the Court finds that Plaintiff's claims accrued no earlier than December 2020 under the discovery-diligence rule, it need not examine whether the "continuous treatment doctrine" exception applies to Plaintiff's claims of medical malpractice.

## II.  Failure to State a Claim

Defendant has failed to allege any defect with Plaintiff's complaint beyond the fact that Plaintiff "cannot rely upon conduct that occurred prior to October 26, 2019."  (Def't Mem. at 16.) The Court notes that, read in the light most favorable to the Plaintiff, the Complaint alleges that on October 12, 2018, he presented his June 9, 2018, Northwell PSA test results to Dr. Castagnino, who failed to conduct a prostate examination or order further diagnostic testing.  (FAC at ¶23.)  As previously noted in this opinion, Plaintiff's medical records do not make it clear that the June 2018 Northwell test results were presented to Dr. Castagnino, however, Plaintiff alleges in the FAC that Dr.

16

Castagnino was presented with the June 2018 PSA test results in October 2018, which allegations the Court must accept as true for purposes of the instant motion.  (FAC at ¶23, Med. Rec. at 147-48.)  Given the standard of review for a motion to dismiss, the Court finds that Plaintiff's medical records do not explicitly contradict the allegations in his complaint regarding presenting the lab results to Dr. Castagnino, Plaintiff's VAMC Northport physician.

Although federal law governs claim accrual under the FTCA, "the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).  Therefore, in a medical malpractice action brought under the FTCA, "state law applies to the United States . . . in the same manner it would apply to a private person." *Kawache v. United States*, No. 08-CV-3128 (KAM), 2011 WL 441684, at *14 (E.D.N.Y. Feb. 7, 2011), *aff'd*, 471 F. App'x 10 (2d Cir. 2012) (finding that state law governs the elements of medical malpractice, the burden of proof, and whether expert testimony is needed).  "Under New York law, '[t]he essential elements of a medical malpractice claim are a departure from good and accepted medical practice and evidence that such departure was a proximate cause of the plaintiff's injury.'" *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 252 (S.D.N.Y. 2013) (quoting *Williams v. Sahay*, 783 N.Y.S.2d 664 (2d Dep't 2004)).

The Court finds that, at this early stage in the proceedings and assuming all facts in the complaint to be true, Plaintiff has plausibly pleaded a claim of medical malpractice. Plaintiff alleges that Dr. Castagnino, his primary care physician at VAMC Northport, "failed to appreciate the report from Northwell Health Laboratories of plaintiff's PSA value of 7.99 . . . and to order/recommend diagnostic testing" among other shortcomings. (FAC at ¶35.) Plaintiff argues that this failure to diagnose his prostate cancer at an earlier stage resulted in further progression of the cancer, which "was not contained in the prostate, metastasized to the regional lymph nodes, and subjected plaintiff to further treatment for metastatic prostate cancer." (FAC at ¶36.) Plaintiff states that consequently he was required to undergo more severe treatment, which caused him to experience "pain and suffering and suffer[] a loss of enjoyment of life as a result of his injuries" as well as "other special and consequential damages including economic loss." (FAC at ¶37.) Assuming Plaintiff's prostate cancer *could* have been detected earlier through a referral to a urologist in 2018 by Dr. Castagnino, the Court is satisfied that Plaintiff has pleaded a claim for medical malpractice.

<u>**CONCLUSION**</u>

For the forgoing reasons, Defendant's motion to dismiss the FAC is respectfully **denied**.  In light of this Memorandum & Order, the parties are referred to Magistrate Judge Lindsay for supervision of discovery, a settlement conference, and pre-trial issues as appropriate.


**SO ORDERED**

Dated:     April 3, 2024
           Brooklyn, New York

                                        _____
                                        **HON. KIYO A. MATSUMOTO**
                                        United States District Judge
                                        Eastern District of New York

19